**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION**

| | |
|---|---|
| NICOLE K. and ROMAN S., by next friend Linda R.; ABIGAIL R., LILY R., and RACHEL H., by next friend Nancy B.; and ANNA C., BRIAN P., AMELIA P., ALEXA C., and ZACHARY H., by next friend Jessie R.; for themselves and those similarly situated, | Case No.: 3:19-cv-00025 |
| | JURY TRIAL DEMANDED |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | |
| MARION COUNTY, LAKE COUNTY, and SCOTT COUNTY, INDIANA | |
| Defendants. | |

**CLASS ACTION COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs, by and through their counsel, bring this civil action for declaratory and injunctive relief against Marion County, Lake County, and Scott County, Indiana (collectively, "Defendants"), and allege as follows:

**NATURE OF THE ACTION**

1.      Removing a child from his or her family is one of the most traumatic experiences that can be imagined.  When the government takes a child from his or her home on the grounds of abuse or neglect, it has an obligation to protect not only the child's safety but also the child's legal rights.  Those rights include the right to be represented by an attorney when the child's fundamental liberty interests are at stake.  Such liberty interests center on whether the child will be placed in state custody through foster care and include where the child will live, with whom the child will live, and whether the integrity of family relationships will be maintained or dissolved — issues at the very core of child dependency proceedings that are adjudicated following substantiated allegations of abuse or neglect.  The juvenile dependency court is

charged with making decisions about these and other aspects of the child's living situation, decisions that will potentially impact the child for the rest of his or her life. Protecting the child's due process rights in these proceedings is therefore of paramount importance and cannot occur without the child having representation by an attorney. Without an attorney, a child in a dependency proceeding risks losing his or her liberty interests, as other parties present evidence, offer witnesses, and make decisions about the child's future that the child is not permitted to discredit, challenge, or even address. Such an omission is fundamentally unfair and contrary to the due process and equal protection clauses of the Fourteenth Amendment.

2.      More than 30 states have recognized how essential it is for children to have legal representation in dependency proceedings, and those states have made it mandatory to appoint counsel to children in such proceedings. *See A Child's Right to Counsel: A National Report Card on Legal Representation for Abused & Neglected Children* (3d ed. 2012), *available at:* http://www.caichildlaw.org/Misc/3rd_Ed_Childs_Right_to_Counsel.pdf, last visited January 28, 2019. Moreover, critical research, policy documents, and policy changes at the federal level further reflect an evolved national consensus regarding the protection of children's legal rights in dependency proceedings. The American Bar Association declared in 1996 that "[a]ll children subject to court proceedings involving allegations of child abuse and neglect should have legal representation as long as the court jurisdiction continues." American Bar Association, Standards of Practice For Lawyers Who Represent Children In Abuse and Neglect Cases (Feb. 5, 1996) at 1, *available at*: https://www.americanbar.org/content/dam/aba/migrated/family/reports/standards_abuseneglect. authcheckdam.pdf, last visited January 29, 2019. In 2009, the Department of Health and Human Services sponsored a multi-year, multi-million dollar study on legal representation of

children, ultimately recommending that, "[f]ederal leadership should ensure that all court-involved children are represented by an attorney in child protection proceedings."  National Quality Improvement Center on the Representation of Children in Child Welfare, 2009-2016 Activities Report, at 4, *available at*: http://www.improvechildrep.org/Portals/0/PDF/QIC-ChildRep%20Brochure%20wRTC%20Language.pdf, last visited January 29, 2019.  In 2017, the Children's Bureau of the U.S, Department of Health and Human Services declared that legal representation for children in dependency proceedings contributes to or is associated with a variety of benefits, including "increases in party perceptions of fairness," "increases in party engagement in case planning, services and court hearings," "more personally tailored and specific case plans and services," "increases in visitation and parenting time," "expedited permanency,"; and "cost savings to state government due to reductions of time children and youth spend in care."  (Ex. 8 (U.S. Department of Health and Human Services, Administration for Children and Families, Children's Bureau, Information Memorandum: High Quality Legal Representation for All Parties in Child Welfare Proceedings, ACYF-CB-IM-17-02, January 17, 2017).)  Even more to the point, in January 2019, the Children's Bureau of the U.S. Department of Health and Human Services dramatically reversed its policy on federal financial support for legal representation of children in dependency cases. The new federal policy allows for states to be reimbursed through the Title IV-E entitlement for up to 50% of the cost of providing legal representation to children.  *See* Administration for Children & Families, U.S. Dept. of Health & Human Services, *Child Welfare Policy Manual*, § 8.1B #30, *available at*: https://www.acf.hhs.gov/cwpm/public_html/programs/cb/laws_policies/laws/cwpm/index.jsp, last visited January 28, 2019.  This major new commitment of federal funding for attorney representation  reflects a profound shift in the landscape on this issue that crosses political lines.

3.      Regrettably, one of the states eschewing attorney representation for children in dependency proceedings is Indiana.  Indiana is one of the diminishing minority of states that does not provide legal representation to its most vulnerable citizens, children who have endured abuse or neglect and have been thrust into byzantine court proceedings that will determine where they live and with whom and how they will spend the rest of their childhood.

4.      Defendants have violated the constitutional rights of children in dependency proceedings in their respective jurisdictions by failing to provide counsel to those children while nonetheless adjudicating the fate of the children's lives and their future familial relations.  In Indiana, including in the Defendant counties, a child facing a month in juvenile detention is appointed an attorney, but an abused child facing 18 years of government-directed foster placements, living among countless strangers in dozens of homes, is not.  That unconstitutional and unconscionable denial of legal representation must change.

5.      In Indiana, dependency proceedings are known as Child in Need of Services (CHINS) proceedings, and may also include Termination of Parental Rights (TPR) proceedings. CHINS proceedings are initiated in county juvenile court when the Department of Child Services (DCS) files a petition alleging that the subject child has suffered substantiated abuse or neglect and is therefore a Child in Need of Services.  CHINS proceedings are governed by Indiana Code Title 31, Article 34.  If circumstances warrant, DCS may also file a petition to terminate parental rights, thus initiating TPR proceedings.  TPR proceedings are governed by Indiana Code Title 31, Article 35.

6.      In juvenile court proceedings in Indiana, appointment of an attorney is mandatory for "[a] child charged with a delinquent act" and for "[a] parent, in a proceeding to terminate the parent-child relationship."  Ind. Code Ann. § 31-32-4-1; *see also* Ind. Code Ann. §

31-32-2-5 ("A parent is entitled to representation by counsel in proceedings to terminate the parent-child relationship."). Appointment of counsel for indigent parents in CHINS proceedings is also mandatory. *See* Ind. Code Ann. § 31-34-4-6; *G.P. v. Indiana Dept of Child Servs*, 4 N.E.3d 1158 (Ind. 2014). In practice, on information and belief, parents are appointed counsel in CHINS proceedings in most cases. In stark contrast, appointment of counsel for non-delinquent children in both CHINS and TPR proceedings is entirely discretionary. Ind. Code Ann. § 31-32-4-2(b) ("The court may appoint counsel to represent any child in any other proceeding."). Although juvenile courts have discretion to appoint counsel to children in CHINS and TPR proceedings, on information and belief, such appointment is almost never made. The juvenile court may appoint a Guardian Ad Litem (GAL) or Court Appointed Special Advocate (CASA) for the child at any point in the proceedings. Ind. Code Ann. § 31-32-3-1.

7.      While a GAL/CASA can serve a valuable role in a dependency proceeding, a GAL/CASA is never an acceptable substitute for a licensed attorney. The roles of a GAL/CASA and an attorney are not competitive or mutually exclusive; rather, they are complementary but distinct. In Indiana, as in most states, it is not the role of the GAL/CASA to protect the legal rights of the child, nor are they trained to do so. Instead, if a GAL/CASA is appointed at all, their statutorily mandated role is to "represent and protect the best interests of the child." Ind. Code Ann. § 31-32-3-6. (*See also* Ex. 1 (American Bar Association, Section of Litigation, Model Act Governing the Representation of Children in Abuse, Neglect, and Dependency Proceedings (Aug. 2011)) at 4 ("A best interest advocate does not replace the appointment of a lawyer for the child. A best interest advocate serves to provide guidance to the court with respect to the child's best interest and does not establish a lawyer-client relationship with the child.").) In some cases, a child's stated position might align with the government's

view of the child's best interests, but in many cases it will not.  It is precisely in that

circumstance that a child most needs an attorney, to ensure the child's views are clearly

communicated to the court, to ensure that the reasons for the child's preference are fully

explained, and to ensure that any evidence supporting the alleged best interest is fully examined

and tested by a competent attorney.  A GAL/CASA is neither trained nor charged to do any of

these things.  Indeed, according to the Indiana State Office of GAL/CASA, "[a] GAL/CASA

program has a written volunteer policies and procedures manual that is provided to every

volunteer....The manual must specifically prohibit a GAL/CASA from:...providing legal

advice."  (Ex. 2 (Indiana State Office of GAL/CASA, Program Standards) at ¶ 9 (emphasis

added).)  Therefore, without an attorney, a child in an Indiana dependency proceeding is simply

deprived of all legal advice and is denied the critical attorney-client privilege that facilitates

unconstrained communication.

8.      The denial of legal counsel to children is particularly troublesome in light of

Indiana Code § 31-10-2-1, which governs family law and juvenile law.  The statute proclaims

that "[i]t is the policy of this state" to "provide a judicial procedure that: (A) ensures fair

hearings; [and] (B) recognizes and enforces the legal rights of children and their parents."  Ind.

Code Ann. § 31-10-2-1(10) (emphasis added).  Purporting to recognize and protect the legal

rights of children, while at the same time denying those children access to an attorney, is both

nonsensical and unconscionable.  Providing an attorney to parents in CHINS and TPR

proceedings, but not to the children who are the subject of those proceedings, is equally

reprehensible.

9.      Defendants' failure to provide counsel to children in CHINS and TPR

proceedings is particularly problematic, because Indiana is one of the most active states in the

country when it comes to removing children from their homes due to abuse or neglect. And the numbers are on the rise. A 2018 study reported that the national average of children placed in out-of-home state care is 5.5 per 1,000, but in Indiana, the number is roughly 13 children per 1,000. (Ex. 3 (Indianapolis Business Journal, Report: Indiana Putting Children in Foster Care at Twice National Rate (Feb. 1, 2018)).) Moreover, as of the date of the report, the number of children in foster care in Indiana had doubled since 2012, to a total 16,834 children. (*Id.*) With this many children's lives at stake, it is imperative that Indiana juvenile courts, including those in Defendants' jurisdictions, ensure that CHINS and TPR proceedings are as informed, fair, and robust as possible.

10.    In many CHINS and TPR proceedings, the outcome may be a temporary fix that removes the child from harm's way, but ultimately has long-term adverse consequences attendant with being a foster child, such as moving from home to home or enduring a lengthy placement in a state-run group home where the child is unable to develop any close or lasting relationships. Research has revealed that young adults who spent significant time in foster care have worse outcomes than their peers in the general population in a variety of important areas — from education to employment to housing to early parenthood. *See* Annie E. Casey Foundation, *Fostering Youth Transitions: Using Data to Drive Policy and Practice Decisions*, Nov. 13, 2018, *available at* https://www.aecf.org/resources/fostering-youth-transitions, last visited January 28, 2019. Research has specifically revealed the instability faced by Indiana youth in foster care, and the resulting negative outcomes and barriers to well-being experienced during their transition to adulthood. *Id.*; Annie E. Casey Foundation, *2018 Indiana Profile Transition-Age Youth In Foster Care*, Nov. 13, 2018, *available at* https://www.aecf.org/m/resourcedoc/indiana-fosteringyouthtransitions-2018.pdf, last visited

January 28, 2019.  A multitude of other issues plague the Indiana foster care system, including those highlighted by the recently departed Director of DCS, who stated that Indiana foster children were "being systematically placed at risk" and that missteps by the Indiana government "all but ensure children will die."  (Ex. 4 (M. Bonaventura letter to E. Holcomb dated Dec. 12, 2017) at 2-3.)  In fact, Indiana children are dying, and at alarming rates.  In the most recent year for which modest federal data are available, Indiana had 70 reported child fatalities from abuse or neglect—the seventh highest among all states.  *See* U.S. Department of Health and Human Services, Administration for Children and Families, Children's Bureau, Child Maltreatment 2016, at Table 4-1, *available at*: https://www.acf.hhs.gov/sites/default/files/cb/cm2016.pdf, last visited January 29, 2019.

11.     Systemic reform is needed to remedy the profound problems facing Indiana foster children.  Much of the reform must happen outside of the courtroom and may be challenging to implement in a comprehensive manner.  Rectifying problems inside the courtroom, *i.e.*, in CHINS and TPR proceedings, is far more straightforward.  Because CHINS and TPR proceedings form the legal backdrop for placement in Indiana's foster care system, it is essential that these proceedings reflect a commitment to due process for all parties and not contribute to the variety of hardships that the children must endure in every aspect of their lives. Children in such proceedings must not be ignored or marginalized by the court process; they deserve the multitude of benefits that can only be provided by competent legal representation before their fate is fixed by the court.

12.     The Institute of Judicial Administration and the American Bar Association recognized nearly 40 years ago that "[t]he participation of counsel on behalf of **all** parties subject to juvenile and family court proceedings is essential to the administration of justice and

to the fair and accurate resolution of issues at all stages of those proceedings." (Ex. 5

(IJA/ABA, Juvenile Justice Standards, Standards Relating to Counsel for Private Parties, Std.

1.1, at 11 (1980)) (emphasis added).) Most states have aligned their dependency proceedings to

this straightforward principle. Indiana must do the same.

13.    As the American Bar Association has further explained:

> Courts in abuse and neglect cases dramatically shape a child's entire
> future in that the court decides where a child lives, with whom the child
> will live and whether the child's parental rights will be terminated. **No
> other legal proceeding that pertains to children has such a major
> effect on their lives.** While the outcome of an abuse and neglect case has
> drastic implications for both the parents and the children involved, only
> **children's physical liberty is threatened**. An abuse and neglect case that
> results in removal of the child from the home may immediately or
> ultimately result in the child being thrust into an array of confusing and
> frightening situations wherein the State moves the child from placement to
> placement with total strangers, puts the child in a group home, commits
> the child to an institution, or even locks the child up in detention for
> running away or otherwise violating a court order. **Our notion of basic
> civil rights...demand[s] that children and youth have a trained legal
> advocate to speak on their behalf and to protect their legal rights**.

(Ex. 1 (American Bar Association, Section of Litigation, Report to the House of Delegates (Aug.

2011) at 1 (emphasis added).) The ABA has also observed that "[c]hildren who are represented

by a lawyer often feel the process is fairer because they had a chance to participate and to be

heard. Consequently, children are more likely to accept the court's decision because of their own

involvement in the process." (*Id*. at 4.)

14.    At least one federal court has recognized the trauma faced by children in

dependency proceedings and has held that foster children have a constitutional right to adequate

legal representation. *See Kenny A. v. Perdue*, 356 F. Supp. 2d 1353 (N.D. Ga. 2005).

15.     The result in *Kenny A.* is not surprising in light of the substantial evidence that dependency proceedings pose risks to children's fundamental physical liberty interests and that outcomes for children are improved when they are represented by counsel.

16.     Children experience substantial trauma from being abused or neglected, and they are further traumatized by being torn apart from the only homes they know and the only people they love.  Such trauma has lasting, and sometimes permanent, effects.  *See* Jim Casey Youth Opportunities Initiative, Trauma-Informed Practice with Young People in Foster Care, *available at*: https://www.aecf.org/m/resourcedoc/jcyoi-IssueBrief5TraumaInformedPractice-2012.pdf, last visited January 29, 2019.  Studies have shown that the instability of being shuttled from home to home, which is all too common for children in dependency proceedings, can "fundamentally and permanently alter the functioning of key neural systems involved in learning, memory, and self-regulation and the complex networks of neuronal connectivity among these systems."  (Ex. 6 (Fisher *et al.*, *A translational neuroscience perspective on the importance of reducing placement instability among foster children*, 92(5) Child Welfare 9-36 (2013)).)

17.     Empirical studies have shown that children who are not represented by counsel are routinely erroneously deprived of their most fundamental protected interests, even when they have an appointed GAL or CASA.  (*See, e.g.*, Ex. 7 (Zinn, A. & Slowriver, J. (2008), Expediting Permanency: Legal Representation for Foster Children in Palm Beach County.  Chapin Hall Center for Children at the University of Chicago).)  As the U.S. Department of Health and Human Services recently recognized, "[t]here is a growing body of empirical research linking early appointment of counsel (at or prior to a party's initial appearance in court) and effective legal representation in child welfare proceedings to improved case planning,

expedited permanency and cost savings to state government." (Ex. 8 (U.S. Department of

Health and Human Services, Administration for Children and Families, Children's Bureau,

Information Memorandum: High Quality Legal Representation for All Parties in Child Welfare

Proceedings, ACYF-CB-IM-17-02, January 17, 2017).) According to HHS:

> [T]here is widespread agreement in the field that **children require legal representation in child welfare proceedings**. This view is rooted in the reality that judicial proceedings are complex and that all parties, especially children, need an attorney to protect and advance their interests in court, provide legal counsel and help children understand the process and feel empowered.

(*Id.* at 3-4 (emphasis added, note omitted).)

18.     In addition to advocating for their clients, identifying relevant legal issues, and

using their legal training and skills to protect their clients' rights, attorneys can "assist their

clients in exploring the practical effects of taking various positions, the likelihood that a court

will accept particular arguments, and the impact of such decisions on the child, other family

members, and future legal proceedings." (Ex. 1 (American Bar Association, Section of

Litigation, Report to the House of Delegates (Aug. 2011) at 4.) It is unlikely that a child who

has been placed in dependency proceedings by the government will know that he or she has a

right to be heard unless that right is explained to the child by an attorney. Even when a child

knows his or her rights, without an attorney, the child is likely to give up and remain silent if his

or her wishes are downplayed or disregarded at any point in the proceedings. An attorney's role

in a dependency proceeding is as unique as it is essential to the protection of his or her client's

constitutional rights. Simply put, children in dependency proceedings who are not represented

by counsel are placed at an unacceptably high risk of being erroneously deprived of their rights.

19.     Indiana's discretionary approach to appointing counsel for children in CHINS

and TPR proceedings is unconstitutional and unfair, and it is at odds with the majority of the

nation, with the long-established body of evidence demonstrating the importance of mandatory counsel, and with the best practices endorsed by countless legal organizations, including the ABA and IJA.  The absolute discretion that Indiana trial courts currently have in appointing counsel for children results in inconsistent, unpredictable outcomes that leave children with no voice and no one to advocate for their legal rights.  It is no wonder that the Indiana Court of Appeals recently stated that "there are repeated, significant violations of due process occurring in termination of parental rights cases throughout this state. This is a disturbing trend given the fundamental rights at issue in these types of cases." *A.A. v. Ind. Dep't of Child Servs.*, 100 N.E.3d 708, 709 (Ind. Ct. App. 2018).  The court further stated that "[g]iven the fundamental due process rights at issue in termination of parental rights cases, **affording litigants these fundamental due process rights is essential, including not only the litigants but also their children**." *Id.* (emphasis added).

## JURISDICTION AND VENUE

20.    Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 for violations of civil rights under the Fourteenth Amendment to the United States Constitution.

21.    The case presents a federal question within this Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331 and 1343(a)(3).

22.    Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

23.    Venue is proper in this Court under 28 U.S.C. § 1391, because all Defendants are residents of Indiana and at least one Defendant resides in this District, and because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.  28 U.S.C. § 1391(b).

### NAMED PLAINTIFFS

### NICOLE K. and ROMAN S.

24.     Nicole K. and Roman S., ages 6 and 5, respectively, are half-siblings living with Linda R., a foster parent in Marion County.  Nicole and Roman have lived with Linda R. for approximately three years.  Nicole and Roman share the same biological mother but have different biological fathers.  Defendant Marion County has designated both Nicole and Roman as CHINS.

25.     DCS removed Nicole from her home as an infant because her biological mother was an alcoholic and there were severe issues of domestic violence in the home.  Nicole was designated a CHINS in 2013 but was not assigned an attorney to represent her in CHINS proceedings.  During the pendency of her CHINS proceedings, Nicole was shuttled to foster home after foster home, living in a total of **20 homes** before Linda R. took her into her home at the age of 3.  The instability in home life has led to severe behavioral problems for Nicole, and she has been kicked out of daycare due to these issues.  Nicole has been diagnosed with ADHD, and her teachers have commented that while she is very bright, she is failing emotionally and behaviorally.

26.     Roman has never lived with his biological parents.  Because of his mother's alcoholism and domestic violence, Roman was placed in foster care by DCS straight from the hospital following his birth in 2013.  Roman was designated a CHINS in 2013 but was not assigned an attorney to represent him in CHINS proceedings.  During the pendency of his CHINS proceedings, like Nicole, Roman was shuttled to foster home after foster home, living in a total of **20 homes** before Linda R. took him into her home at the age of 2.  The instability in home life has led to severe behavioral problems for Roman, and he has been kicked out of

daycare due to these issues. Roman has been diagnosed with ADHD. The instability in Roman's home life also meant that when Linda R. took him in at the age of 2, Roman was far behind his peers in language. He could not speak coherently and could only babble. And Roman was also far behind his peers in other areas, such as potty training.

27.    Marion County has failed to appoint any legal counsel to Nicole or Roman in their CHINS proceedings pending in the Marion County Juvenile Court. Marion County has appointed counsel to represent the biological mother of Nicole and Roman in the CHINS proceedings. Nicole and Roman have been and continue to be denied any legal representation in their CHINS proceedings.

28.    As a result of Marion County's actions and inactions, Nicole and Roman have been and continue to be irreparably harmed. Marion County has violated Nicole's and Roman's constitutional rights under the Fourteenth Amendment by failing to assign an attorney to represent Nicole and Roman in their CHINS proceedings, proceedings in which their liberty interests were and are at stake.

29.    Nicole and Roman appear by their next friend, Linda R. Linda R. has served as the foster parent for Nicole and Roman for the past three years and is sufficiently familiar with the facts and circumstances surrounding the children's situation to represent the children's interests in this litigation fairly and adequately.

### ABIGAIL R., LILY R., and RACHEL H.

30.    Abigail R., Lily R., and Rachel H., ages 8, 7, and 3, respectively, are biological sisters living with Nancy B., a foster parent in Lake County. The girls have lived with Nancy B. since approximately May 2015, shortly after they were removed from their biological parents

and placed in foster care by DCS.  Abigail, Lily, and Rachel have all been designated as CHINS by Lake County.

31.    In 2015, the three sisters were homeless, living in a car with their parents, when DCS removed them from their parents and placed them in foster care.  Rachel was only two months old.  Abigail and Lily showed signs of abuse, with bruises on their bodies.  Both parents were heavy drug users and did not adequately care for their children.  When Rachel was born, she had Vicodin in her system.

32.    Next friend Nancy B. and her husband took in the three girls in approximately May 2015.  During subsequent visits with their biological parents, the girls were exposed to drugs and their lives were endangered.  The girls were not placed in car seats or even given seatbelts when riding in automobiles with their parents; instead, they were told by their parents to sit on the adults' laps during transit.  The girls witnessed their dad doing drugs on numerous occasions, and he told them that he sells drugs for a living.

33.    In 2016, the biological mother and father completely disappeared and have not been in the girls' lives ever since.  TPR proceedings were subsequently initiated in Lake County with respect to all three girls.  The disappearance of their parents had a traumatic effect on the girls, and Lily in particular began exhibiting destructive behavior, including throwing and hitting things.

34.    In late 2016, DCS began the process of putting the girls up for adoption.  One of Abigail's and Lily's teachers was highly motivated to adopt the girls, and she completed the required training and even purchased beds and car seats to facilitate the adoption.  DCS arranged five separate families to meet with the girls for potential adoption, but the case manager would not allow them to meet with the teacher.  The teacher ultimately contacted a

DCS supervisor and was successful in arranging a visit with the girls. The girls responded very favorably to the teacher during the visit. In late 2016, however, the case manager reported that the girls' grandmother had been located and that she wanted to adopt the girls. By this time, the girls had started therapy, and they would call the grandmother from the therapy sessions. Initially, it seemed promising that their grandmother would adopt them and give them a loving home. She flew to Indiana from a different state to visit the girls. After she returned to her home state, however, the grandmother stopped answering calls and continually made excuses that stalled the adoption, sending a clear signal that the girls were not a priority for her. Throughout the CHINS and TPR proceedings, neither Abigail, Lily, nor Rachel have been appointed an attorney and, as a result, they have had no information about their legal rights, no legal counsel, no voice in the adjudication of where  or with whom they live.

35.     Witnessing the trauma and injustice that Abigail, Lily, and Rachel have endured, Nancy B. and her husband have decided that they want to adopt the girls, which is thrilling to Abigail, Lily, and Rachel. Abigail has asked her case manager "do I get a say in where I end up?" The case manager responded that Abigail does not get a say.

36.     Lake County has failed to appoint any legal counsel to Abigail, Lily, or Rachel in their CHINS or TPR proceedings pending in the Lake County Juvenile Court. Lake County is required by law to appoint counsel to represent the girls' biological parents in the TPR proceedings, but not Abigail, Lily, or Rachel, children whose lives and liberty interests are dramatically affected by the outcome of those proceedings. Abigail, Lily, and Rachel have been and continue to be denied any legal representation in their CHINS and TPR proceedings.

37.     As a result of Lake County's actions and inactions, Abigail, Lily, and Rachel have been and continue to be irreparably harmed. Lake County has violated Abigail's, Lily's,

and Rachel's constitutional rights under the Fourteenth Amendment by failing to assign an attorney to represent the girls in their CHINS and TPR proceedings, proceedings in which their liberty interests were and are at stake.

38.     Abigail, Lily, and Rachel appear by their next friend, Nancy B.  Nancy B. has served as the foster parent for Abigail, Lily, and Rachel since May 2015 and is sufficiently familiar with the facts and circumstances surrounding the children's situation to represent the children's interests in this litigation fairly and adequately.

### ANNA C., BRIAN P., AMELIA P., ALEXA C., and ZACHARY H.

39.     Anna C., Brian P., Amelia P., Alexa C., and Zachary H., ages 15, 12, 11, 5, and 2, respectively, are foster children living in Scott County.  All five children have the same biological mother.  Brian and Amelia also have the same biological father and are full siblings. The other three children each have different biological fathers and are half-siblings with each other and with Brian and Amelia. Anna, Brian, Amelia, Alexa, and Zachary have all been designated as CHINS by Scott County.

40.     In March 2016, a CHINS case was opened in Scott County for Anna, Brian, Amelia, and Alexa, but the kids were not yet removed from the home of their biological mother. Zachary had not yet been born.  In June 2016, their biological mother was jailed and then sent to a homeless shelter.  Anna, Brian, Amelia, and Alexa lived with their biological mother in the homeless shelter until October 2016, when the mother was again arrested and sent to jail.  The children then went to live with Jessie R., their second cousin.  Prior to moving in with Jessie R., Anna and Brian had suffered repeated physical abuse at the hands of their biological mother and the mother's various boyfriends.  On one occasion, Anna's abuse caused her to bleed onto her shoes, and even after she was in the safety of a foster home, the sight of those shoes was

traumatic for Anna and she refused to wear them.  Brian's abuse included beatings on his back with a yardstick by his mother and her boyfriends.  Because he was the only boy among the children (Zachary had not yet been born), Brian endured more severe beatings than his sisters.  As a result of the physical and emotional abuse they suffered, Amelia and Alexa suffer from attachment disorder.

41.     In November 2016, Zachary was born.  He was born into state custody, in light of his mother's inability to properly care for him and her history of abuse towards her other children.  Because of his mother's heavy drug use, Zachary was born with marijuana and methamphetamines in his system.  Zachary was released from the hospital to the home of a family member close to Jessie R.  He continues to live with that family member, who hopes to adopt him.

42.     Prior to January 2018, the children were required to regularly visit with their biological mother.  When they returned from the visits, all of the children would be emotionally exhausted, and Alexa would be particularly distraught, often lashing out violently at those around her.  On June 1, 2017, Anna, Brian, Amelia, Alexa moved into the home of the same family member who was already taking care of Zachary.  That family member hopes to adopt all five children.

43.     In January 2018, on information and belief, the children's biological mother relinquished her legal rights to her children.

44.     Beginning in October 2018, 5-year-old Alexa began having supervised visits with her biological father, upon his release from prison.  On information and belief, DCS plans to transition those visits to unsupervised visits, followed by overnight visits, with a goal of having Alexa live with her biological father at some point thereafter.  Such a transition would

be a potentially devastating and irrevocable life change for Alexa.  Her father has been in prison for most of her life, she has never lived with him and has never known him as "dad."  If she is placed with her biological father, Alexa would be permanently separated from the family that she knows and loves, including her four siblings, without any ability to voice her opinion in the CHINS proceedings or any attorney to represent her interests in preserving these foundational relationship and challenge the placement decision.

45.     The CHINS proceedings for Anna, Brian, Amelia, Alexa, and Zachary have not been smooth.  Although there should be a straightforward path to the termination of parental rights and adoption by their close family member, the proceedings have been difficult and painful, as DCS and the juvenile court decide what will happen to the children.  Throughout the CHINS proceedings, neither Anna, Brian, Amelia, Alexa, nor Zachary have been appointed an attorney and, as a result, they have had no voice in the process, including no information about their rights, no legal counseling, and no say in where or with whom they live.

46.     Scott County has failed to appoint any legal counsel to Anna, Brian, Amelia, Alexa, or Zachary in their CHINS proceedings pending in the Scott County Juvenile Court. Scott County has appointed counsel to represent the biological mother of Anna, Brian, Amelia, Alexa, or Zachary in the CHINS proceedings.  Anna, Brian, Amelia, Alexa, and Zachary have been and continue to be denied any legal representation in their CHINS proceedings.  Scott County is required by law to appoint counsel to represent the children's biological mother in forthcoming TPR proceedings, but not Anna, Brian, Amelia, Alexa, or Zachary, children whose lives and liberty interests are dramatically affected by the outcome of those proceedings.

47.     As a result of Scott County's actions and inactions, Anna, Brian, Amelia, Alexa, and Zachary have been and continue to be irreparably harmed.   Scott County has violated the

constitutional rights of Anna, Brian, Amelia, Alexa, and Zachary under the Fourteenth Amendment by failing to assign an attorney to represent them in their CHINS proceedings, proceedings in which their liberty interests were and are at stake.

48.    Anna, Brian, Amelia, Alexa, and Zachary appear by their next friend, Jessie R. Jessie R. is the children's second cousin. She housed and took care of Anna, Brian, Amelia, and Alexa from October 2016 until June 1, 2017, first as a relative placement and then under a foster parent's license. She is closely related to the family member who currently houses all five children and who hopes to adopt them. Jessie R. is sufficiently familiar with the facts and circumstances surrounding the children's situation to represent the children's interests in this litigation fairly and adequately.

## NAMED DEFENDANTS

49.    Defendant Marion County is a body corporate subject to the jurisdiction of this court. Marion County administers a juvenile court program through which CHINS and TPR proceedings are prosecuted. Appointment of counsel to represent children who are subject to CHINS and TPR proceedings is made at the sole discretion of employees of Marion County. Marion County is headquartered at 200 E. Washington St., Indianapolis, IN 46204.

50.    Defendant Lake County is a body corporate subject to the jurisdiction of this court. Lake County administers a juvenile court program through which CHINS and TPR proceedings are prosecuted. Appointment of counsel to represent children who are subject to CHINS and TPR proceedings is made at the sole discretion of employees of Lake County. Lake County is headquartered at 2293 N. Main Street, Crown Point, IN 46307.

51.    Defendant Scott County is a body corporate subject to the jurisdiction of this court. Scott County administers a juvenile court program through which CHINS and TPR

Case 3:19-cv-00025-RLY-MPB     Document 1     Filed 02/06/19     Page 21 of 31 PageID #: 21

proceedings are prosecuted.  Appointment of counsel to represent children who are subject to CHINS and TPR proceedings is made at the sole discretion of employees of Scott County. Scott County is headquartered at 1 E. McClain Ave., Scottsburg, IN 47170.

## CLASS ACTION ALLEGATIONS

52.     The case is brought as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of the following proposed class: all children who are in Child in Need of Services (CHINS) proceedings, pursuant to Indiana Code Title 31, Article 34, or Termination of Parental Rights (TPR) proceedings, pursuant to Indiana Code Title 31, Article 35, in any of the Defendant Counties and who do not have a licensed attorney of record to represent them in those proceedings.

53.     On information and belief, the proposed class consists of more than 5,000 children.  The proposed class is sufficiently numerous to make individual joinder impracticable. Joinder is also impracticable because the proposed class consists of children who are unrepresented by counsel, have limited financial means, have limited understanding of the U.S. judicial system, and who are in many instances separated from their nuclear families.

54.     All of the named plaintiffs and proposed class members are entitled to effective legal representation in their CHINS and TPR proceedings and are harmed by the failure of Defendants to provide adequate and effective legal representation in those proceedings.

55.     Common questions of fact and law affect proposed class members, including whether Defendants routinely fail to appoint counsel to represent children in CHINS and TPR proceedings and whether such failure violates Plaintiffs' rights to procedural due process and equal protection, as guaranteed by the Fourteenth Amendment to the United States Constitution.

56.     The claims of named plaintiffs are typical of those of the proposed class with respect to the legality of Defendants' actions and inactions in CHINS and TPR proceedings.

57.     Named plaintiffs will fairly and adequately protect the interests of the class they seek to represent.  If children in the proposed class are required to prosecute individual actions against the Defendants, Defendants' unlawful practices will evade judicial review.

58.     Named plaintiffs are represented by:

a.  Children's Advocacy Institute, a nonprofit legal organization whose attorneys have substantial experience and expertise in child welfare litigation nationally;

b.  Morrison & Foerster LLP, a global private law firm with extensive experience in complex civil litigation including class action litigation; and

c.  DeLaney & DeLaney LLC, a private law firm with extensive experience in complex civil litigation, including class action litigation, and which maintains an office in Indianapolis.

59.     Counsel for Plaintiffs have investigated all claims in this action and have committed sufficient resources to represent the proposed class.  Plaintiffs' counsel are aware of no conflicts between or among members of the proposed class.

60.     Each named plaintiff appears by a next friend, and each next friend is sufficiently familiar with the facts of the child's situation to fairly and adequately represent the child's interests in this litigation.

61.     Defendants have acted or failed to act in a manner generally applicable to the proposed class, necessitating declaratory and injunctive relief for the proposed class.

## FACTUAL ALLEGATIONS

62.     In Indiana, appointment of counsel for children in CHINS and TPR proceedings is not mandatory.  Ind. Code Ann. § 31-32-4-2(b).

63.     In Indiana, appointment of counsel for children in CHINS and TPR proceedings is made at the sole discretion of the juvenile court judge presiding over the case.

64.     In Indiana, appointment of counsel for indigent parents in CHINS and TPR proceedings is mandatory.  Ind. Code Ann. § 31-34-4-6; Ind. Code Ann. § 31-32-2-5.

**Defendant Marion County**

65.     In Marion County, there is a juvenile court in which CHINS and TPR proceedings take place.  Appointment of counsel for children in CHINS and TPR proceedings in Marion County is made at the sole discretion of the juvenile court judge presiding over the case.

66.     In Marion County, on information and belief, there are no written guidelines by which the juvenile court judges decide whether to appoint counsel to children in CHINS and TPR proceedings.

67.     In Marion County, on information and belief, an attorney is appointed to children in CHINS proceedings in fewer than 10% of cases.

68.     In Marion County, on information and belief, counsel has been appointed to children in CHINS proceedings in at least some cases.

69.     In Marion County, appointment of counsel to indigent parents in CHINS proceedings is mandatory.

70.     In Marion County, on information and belief, counsel are appointed to parents in CHINS proceedings in most cases.

71.     In Marion County, on information and belief, attorneys are appointed to children in CHINS proceedings at a lower rate than appointment of counsel to parents in CHINS proceedings.

72.     In Marion County, on information and belief, an attorney is appointed to children in TPR proceedings in fewer than 10% of cases.

73.     In Marion County, on information and belief, counsel has been appointed to children in TPR proceedings in at least some cases.

74.     In Marion County, appointment of counsel to parents in TPR proceedings is mandatory.

75.     In Marion County, on information and belief, counsel are appointed to parents in TPR proceedings in most cases.

76.     In Marion County, on information and belief, attorneys are appointed to children in TPR proceedings at a lower rate than appointment of counsel to parents in TPR proceedings.

77.     In Marion County, children within the class of Plaintiffs have been and continue to be subject to CHINS and TPR proceedings in which their liberty interests were and are at stake.  These class members were not and have not been appointed an attorney in these proceedings.  These class members, therefore, have been and continue to be denied their constitutional rights under the Fourteenth Amendment.

## Defendant Lake County

78.     In Lake County, there is a juvenile court in which CHINS and TPR proceedings take place.  Appointment of counsel for children in CHINS and TPR proceedings in Lake County is made at the sole discretion of the juvenile court judge presiding over the case.

79.     In Lake County, on information and belief, there are no written guidelines by which the juvenile court judges decide whether to appoint counsel to children in CHINS and TPR proceedings.

80.    In Lake County, on information and belief, an attorney is appointed to children in CHINS proceedings in fewer than 10% of cases.

81.    In Lake County, on information and belief, counsel has been appointed to children in CHINS proceedings in at least some cases.

82.    In Lake County, appointment of counsel to indigent parents in CHINS proceedings is mandatory.

83.    In Lake County, on information and belief, counsel are appointed to parents in CHINS proceedings in most cases.

84.    In Lake County, on information and belief, attorneys are appointed to children in CHINS proceedings at a lower rate than appointment of counsel to parents in CHINS proceedings.

85.    In Lake County, on information and belief, an attorney is appointed to children in TPR proceedings in fewer than 10% of cases.

86.    In Lake County, on information and belief, counsel has been appointed to children in TPR proceedings in at least some cases.

87.    In Lake County, appointment of counsel to parents in TPR proceedings is mandatory.

88.    In Lake County, on information and belief, counsel are appointed to parents in TPR proceedings in most cases.

89.    In Lake County, on information and belief, attorneys are appointed to children in TPR proceedings at a lower rate than appointment of counsel to parents in TPR proceedings.

90.    In Lake County, children within the class of Plaintiffs have been and continue to be subject to CHINS and TPR proceedings in which their liberty interests were and are at stake.

These class members were not and have not been appointed an attorney in these proceedings. These class members, therefore, have been and continue to be denied their constitutional rights under the Fourteenth Amendment.

### **Defendant Scott County**

91.     In Scott County, there is a juvenile court in which CHINS and TPR proceedings take place.  Appointment of counsel for children in CHINS and TPR proceedings in Scott County is made at the sole discretion of the juvenile court judge presiding over the case.

92.     In Scott County, on information and belief, there are no written guidelines by which the juvenile court judges decide whether to appoint counsel to children in CHINS and TPR proceedings.

93.     In Scott County, on information and belief, an attorney is appointed to children in CHINS proceedings in fewer than 10% of cases.

94.     In Scott County, on information and belief, counsel has been appointed to children in CHINS proceedings in at least some cases.

95.     In Scott County, appointment of counsel to indigent parents in CHINS proceedings is mandatory.

96.     In Scott County, on information and belief, counsel are appointed to parents in CHINS proceedings in most cases.

97.     In Scott County, on information and belief, attorneys are appointed to children in CHINS proceedings at a lower rate than appointment of counsel to parents in CHINS proceedings.

98.     In Scott County, on information and belief, an attorney is appointed to children in TPR proceedings in fewer than 10% of cases.

99.     In Scott County, on information and belief, counsel has been appointed to children in TPR proceedings in at least some cases.

100.     In Scott County, appointment of counsel to parents in TPR proceedings is mandatory.

101.     In Scott County, on information and belief, counsel are appointed to parents in TPR proceedings in most cases.

102.     In Scott County, on information and belief, attorneys are appointed to children in TPR proceedings at a lower rate than appointment of counsel to parents in TPR proceedings.

103.     In Scott County, children within the class of Plaintiffs have been and continue to be subject to CHINS and TPR proceedings in which their liberty interests were and are at stake. These class members were not and have not been appointed an attorney in these proceedings. These class members, therefore, have been and continue to be denied their constitutional rights under the Fourteenth Amendment.

104.     The aforementioned actions and inactions of Defendants constitute an ongoing failure to protect the Fourteenth Amendment rights of Plaintiffs, including due process and equal protection rights.  As a result, Plaintiffs have been and continue to be deprived of their due process and equal protection rights bestowed upon them by the Fourteenth Amendment to the United States Constitution.

## COUNT I
## VIOLATION OF DUE PROCESS RIGHTS UNDER THE U.S. CONSTITUTION
### 42 U.S.C. § 1983

105.     Plaintiffs restate and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

106.     Indiana Code § 31-32-4-2(b) violates the Due Process Clause of the Fourteenth Amendment, both on its face and as applied.

107.    Because Indiana Code § 31-32-4-2(b) purportedly empowers Defendants to withhold appointment of legal counsel for children in CHINS and TPR proceedings, and Defendants have done so, Defendants have caused and will cause the deprivation of Plaintiffs' fundamental liberty interests without due process of law, in violation of the Fourteenth Amendment.

108.    By failing to appoint counsel for children in CHINS and TPR proceedings, Defendants have caused and will cause, whether or not in purported conformance with Indiana Code § 31-32-4-2(b), the deprivation of Plaintiffs' fundamental liberty interests without due process of law, in violation of the Fourteenth Amendment.

**COUNT II**
**VIOLATION OF EQUAL PROTECTION RIGHTS UNDER THE U.S. CONSTITUTION**
**42 U.S.C. § 1983**

109.    Plaintiffs restate and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

110.    Indiana Code § 31-32-4-2(b) violates the Equal Protection Clause of the Fourteenth Amendment, both on its face and as applied.

111.    Because Indiana Code § 31-32-4-2(b) purportedly empowers Defendants to appoint legal counsel to children in CHINS and TPR proceedings at Defendants' pleasure, while at the same time empowering Defendants, also at their pleasure, to withhold appointment of legal counsel for all other children in CHINS and TPR proceedings, who are similarly situated to those who have been appointed counsel, and Defendants have so appointed and so withheld, Defendants have denied Plaintiffs equal protection of the laws, in violation of the Fourteenth Amendment.

112.    Because Indiana Code § 31-32-4-2(b) purportedly empowers Defendants to withhold appointment of legal counsel for children in CHINS and TPR proceedings, while other

laws require Defendants to appoint legal counsel for parents of those same children in those same proceedings, and Defendants have so withheld and so appointed, Defendants have denied Plaintiffs equal protection of the laws, in violation of the Fourteenth Amendment.

113.    By appointing counsel for some, but not all, children in CHINS and TPR proceedings, and by appointing counsel for parents in CHINS and TPR proceedings without also appointing counsel for children in those same proceedings, Defendants have, whether or not in purported conformance with Indiana Code § 31-32-4-2(b), denied Plaintiffs equal protection of the laws, in violation of the Fourteenth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor against Defendants and grant the following relief:

a.  Order that Plaintiffs may maintain this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.  Declare Indiana Code § 31-32-4-2(b) unconstitutional on its face and as applied to Plaintiffs, as violative of Plaintiffs' due process and equal protection rights under the U.S. constitution;

c.  Preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation therewith, from denying Plaintiffs the benefit of appointed counsel in CHINS and TPR proceedings; and require that Defendants provide appointed counsel to Plaintiffs, and to all those similarly situated now and in the future, in all CHINS and TPR proceedings;

d.   Award to Plaintiffs the reasonable costs and expenses incurred in the prosecution

of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988,

and Fed. R. Civ. P. 23(h);

e.   Such other relief as this Court may deem just and proper.


Dated:  February 6, 2019                 By:   /s/ Kathleen A. DeLaney
                                               Kathleen A. DeLaney (#18604-49)
                                               DELANEY & DELANEY LLC
                                               3646 Washington Blvd.
                                               Indianapolis, IN  46205
                                               Telephone: 317.920.0400
                                               Facsimile: 317.920.0404
                                               KDelaney@delaneylaw.net

                                               Mark C. Zebrowski (*pro hac vice anticipated*)
                                               Stephen D. Keane (*pro hac vice anticipated*)
                                               MORRISON & FOERSTER LLP
                                               12531 High Bluff Drive
                                               San Diego, California  92130-2040
                                               Telephone: 858.720.5100
                                               Facsimile: 858.720.5125
                                               MZebrowski@mofo.com
                                               SKeane@mofo.com

                                               Robert C. Fellmeth (*pro hac vice anticipated*)
                                               CHILDREN'S ADVOCACY INSTITUTE
                                               University of San Diego School of Law
                                               5998 Alcala Park
                                               San Diego, California  92110
                                               Telephone: 619.260.4806
                                               Facsimile: 619.260.4753
                                               cpil@sandiego.edu

                                               *Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

/s/ *Kathleen A. DeLaney*
Kathleen A. DeLaney (#18604-49)

DELANEY & DELANEY LLC
3646 Washington Blvd.
Indianapolis, IN  46205
Telephone: 317.920.0400
Facsimile: 317.920.0404
KDelaney@delaneylaw.net

*Attorney for Plaintiffs*